Brown & Williamson, (P.R.) Inc., Plaintiff and Appellee, *v.* R. Sancho Bonet, Treasurer of Puerto Rico, Defendant and Appellant.

No. 7604.   Argued June 10, 1938.—Decided March 10, 1939.

*B. Fernández García,* Attorney General, and *Luis Janer,* Assistant Attorney General, for Appellant. *James R. Beverley, R. Castro Fernández* and *José López Baralt* for Appellee.

Mr. Chief Justice Del Toro delivered the opinion of the Court.

The plaintiff, a corporation organized under the laws of Puerto Rico and with its main office in San Juan, declared for the fiscal year 1935–36, that it owned the following property:

| | |
|---|---|
| "Cash on hand | $3, 268. 34 |
| "Personalty | 17, 632. 58 |
| "Accounts receivable | 38, 827. 28 |
| "Expenses paid in advance | 940. 59 |
| "Total | $60, 668. 79". |

Together with the return it filed the following detailed account of its chattels:

*"Properties in San Juan:*

| | |
|---|---|
| "Merchandise | $2, 407. 40 |
| "Furniture and fixtures | 894. 67 |
| "Automobiles | 2, 146. 34 |
| "Materials (prop.) | 4, 046. 04 |
| "Total | $9, 526. 45 |

*"Properties in Ponce:*

| | |
|---|---|
| "Merchandise | $2, 407. 39 |
| "Furniture and fixtures | 236. 80 |
| "Automobiles | 1, 415. 90 |
| "Internal-revenue stamps on unsold merchandise | 4, 046. 04 |
| "Total | $8, 106. 13". |

The Treasurer of Puerto Rico, for property taxing purposes, fixed the value of the fungible personalty of the plaintiff in $17,630, that is, he considered as such property the $8,092.08 invested by plaintiff in internal-revenue stamps to fix them on the unsold merchandise.

Feeling aggrieved, the plaintiff appealed to the Board of Equalization and Review. The board upheld the Treasurer's assessment. He then paid $525.92, the total amount of the

tax, paying under protest $201.90 which was the amount of the tax on the value of the stamps, and then filed this suit to recover the tax paid under protest, with interest, costs, disbursements and attorney's fees.

After the defendant was served, he demurred to the complaint. The demurrer was overruled. Thereafter a stipulation was drawn up, the substance of which we have already set forth, and the case was submitted to the court for consideration and decision of the question of law in issue, to wit: Can the value of internal-revenue stamps attached to merchandise under a statute requiring it to permit its sale be considered taxable property? The court decided the question in the negative, and the defendant appealed to this court.

That internal-revenue stamps are not in themselves taxable property, has been clearly decided. In 23 R.C.L. 953, cited by the very appellant, it is stated:

"United States internal-revenue stamps are instruments of the general government for the performance of its legitimate functions. They themselves represent the tax which that government levies on the business of the community, for its own support. They are the drafts by which that tax is received in advance, and the vouchers by which its payment is made manifest. It is their capacity to answer these purposes which gives them value as property. They have no value otherwise, and, therefore, as property, are exempt from all state and local taxation."

But the appellant maintains that the situation is quite different when the stamps are attached to the merchandise, in which case they form part of its value and constitute taxable property. He cites in behalf of his contention what was decided by the Supreme Court of the United States in the case of *Jones* v. *Van Benthuysen*, 103 U.S. 87, to wit:

"The facts of the case, as presented to the jury, are embodied in a short bill of exceptions, from which it appears that the plaintiff was a commission merchant, whose business was the sale of manufactured tobacco for others; that he stood charged on the books of the assessor of that district with sales of tobacco amounting

to $1,256,000, on which was assessed a tax of two per cent, which he paid to the collector under protest.

"The ground of this protest is that the sales so made by him, as shown by the bill of exceptions, 'were made while the tobacco was in bond, and was situated in the bonded warehouse; that said tax was assessed and collected upon the value of the tobacco and upon the amount of stamps which by law was required to be affixed upon the same before it was released from the bonded warehouse; that the value of the tobacco so sold was $787,855.67, and the amount of stamps placed upon said tobacco was $468,144.33; and that plaintiff, as a commision merchant, charged his commissions as against his principals, both upon the value of the tobacco in bond and upon the amount invested in said stamps; that the special tax was assessed and collected upon both the value of the tobacco and the amount of the stamps.'

"The court refused to charge that the tax on the sales made by plaintiff was properly assessed by the defendant on the gross amount of them, namely, $1,256,000; but the jury was instructed that the special tax of two per cent upon the amount of sales of dearlers in tobacco could not properly be collected upon the stamps which were required to be. affixed upon the tobacco in bond, and that to the extent of the tax upon the stamps, which plaintiff had paid, he was entitled to recover.

"The act of July 20, 1868, c. 186, under which these taxes were assessed, enacts that 'dealers in tobacco, whose annual sales exceed $100, and do not exceed $1,000, shall each pay $5, and when their annual sales exceed $1,000, shall pay in addition $2 for each $1,000 in excess of $1,000. Every person whose business it is to sell, or offer for sale, manufactured tobacco, snuff, or cigars shall be regarded as a dealer in tobacco.' 15 Stat. 125, 152.

"Undoubtedly this statute only intended to impose a tax upon the sales of tobacco, and if the dealer was also the owner of stamps to be used in paying the duties on tobacco, he could sell them separately in any quantity, without being liable to a tax for such sales. When unattached to the tobacco they do not enter into its value, and they can be bought and sold at their face value as an independent commodity, to be used when and wherever the purchasers choose to do so. For such sales no tax is imposed upon the seller or the buyer.

"On the other hand, we are of opinion that when they are once attached to the tobacco and cancelled, and can never be lawfully used again, they cease to have any separate and independent value,

and that which they had previously has become merged into that of the tobacco. All subsequent sales are made upon the basis of the increased value the tobacco has acquired by the payment of the stamp duty, and can never be estimated apart from this.''

The rule was affirmed by the very Supreme Court in *Jones, Executrix, v. Van Benthuysen,* 115 U.S. 464, as follows:

''This was a suit brought by Van Benthuysen, the defendant in error, a commission merchant engaged in the sale of manufactured tobacco, to recover back from Stockdale, a collector of internal revenue, certain taxes paid under protest on the amount of sales of tobacco in a bonded warehouse. The sole controversy is about the liability of the merchant to pay taxes upon the amount of revenue stamps affixed to the tobacco at the time of its removal from the warehouse. The case was here at the October Term, 1880, and is reported in 103 U. S. 87. We then decided that he was 'not liable to be taxed for the revenue stamps required to be affixed to the tobacco before the removal thereof from a bonded warehouse, unless they were at the time of such sales so affixed, whereby they entered into the value of the tobacco and formed a part of the price thereof.' Under this ruling the judgment of the court below was reversed, and the cause sent back for a new trial. The present writ of error was brought for a review of the judgment upon the second trial. The bill of exceptions shows that the charge to the jury was almost in the exact language of the opinion of this court construing the law on which the rights of the parties depend, and it covered the whole case.''

There is no doubt that the case under our consideration is not exactly like the one decided by the Supreme Court of the United States, cited supra, because in this case we are dealing with a property tax while there it was a sales tax, but it is also doubtless that the issue in both cases was the value of the merchandise for taxing purposes, taking into account the value aforesaid.

The Treasurer, by law—section 295 of the Political Code— is bound to tax the property ''in its real and actual value'', and the value of the merchandise in this case, as given by its owner was $17,632.58, forming part thereof the attached

internal-revenue stamps. The real and actual market value of that property was what served as basis for the assessment.

The plaintiff does not challenge the assessment of the cash on hand. And what else were the stamps but cash invested in something that plaintiff needed in order to sell the merchandise? The total price was charged to the consumer, thus being reimbursed both for the merchandise and the stamps plus the profits of the business.

We are not, hence, before a case of a property tax on a nonexistent value, nor before a case of double taxation, nor can it be said that the internal-revenue stamps attached to the cigarettes did not add to their value, nor that they are mere receipts evidencing that the tax had been paid, as maintained by plaintiff.

We admit that the money paid for the stamps is the property of the Government, as is also sustained by appellee, but we do not think that such fact can prevent the recovery of the tax from that investment by the taxpayer for business purposes. Also the money paid for the merchandise is the property of his vendor, and, still, the merchandise itself is taxable property.

That being our opinion of the case, it is clear that we must reverse the judgment appealed from and render another one dismissing the complaint, without special condemnation of costs.

Mr. Justice De Jesús took no part in the decision of this case.